## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

EDWARD BURTON

    Petitioner,

    v.

UNITED STATES OF AMERICA

    Respondent.

Civil Action No.:  JRR-22-0296

### MEMORANDUM OPINION

This matter comes before the court on *pro se* Petitioner Edward Burton's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, and supplements thereto.  (ECF Nos. 23, 30, 33 and 37; the "Motion"), and the Government's response at ECF No. 32.  The parties' submissions have been reviewed.  For the reasons set forth herein, by accompanying order, the Motion is denied.

## I.     BACKGROUND

Burton is an inmate committed to the custody of the Federal Bureau of Prisons and confined at the Federal Correctional Institution-Fort Dix in Joint Base MDL, New Jersey.  On September 21, 2022, Burton was charged in a Superseding Criminal Information with possession with intent to distribute fentanyl in violation of 21 U.S.C. § 841(a)(1) (Count One) and possession of a firearm and ammunition by a prohibited person in violation of 18 U.S.C. § 922(g)(1) (Count Two).  (ECF No. 5; the "Information.")   On October 12, 2022, pursuant to his Plea Agreement, Burton pled guilty to both counts and was sentenced.  (ECF Nos. 13, 14, 16-18; Plea Agreement, Judgment, Statement of Reasons, and court docket entries reflecting court proceedings).  Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C)), Burton and the Government agreed to a sentence of 156

months' incarceration with four years of supervised release on Count One; and 120 month' incarceration with three years of supervised release on Count Two, concurrent.  (ECF No. 14, ¶ 9.)  Judge Rubin sentenced Burton in accordance with the Plea Agreement.

Attachment A to the Plea Agreement is a Stipulation of Facts signed by Burton, his counsel, and the Government.  Per the Stipulation of Facts, the Drug Enforcement Administration ("DEA") initiated an investigation into a drug-trafficking organization which included Burton and his co-conspirators.  (Stipulation of Facts, ECF No. 14 at 12, ¶ 1.)  Burton and his co-conspirators maintained a premises for the purpose of manufacturing and distributing controlled dangerous substances (the "stash house").  *Id.* ¶ 3.  In connection with the DEA investigation, a number of search and seizure warrants were executed, including one for the stash house.  *Id.* ¶¶ 1-2.  On December 15, 2021, agents executed the search warrant for the stash house and recovered over 400 grams of fentanyl, multiple firearms and ammunition, currency, and jewelry.  *Id.* ¶¶ 4-6.  On the same day, agents also executed a search warrant at Burton's primary residence and a storage unit leased to him.  *Id.* ¶ 9-10.  At these locations, agents recovered firearms, ammunition, currency, and a Mercedes Benz AMG GT 63S registered to Burton.  *Id.*  Burton and other co-conspirators were arrested on December 15, 2023.  *Id.* ¶ 7.

Burton did not appeal his conviction (ECF No. 38 at 2); instead, he filed the instant Motion on February 06, 2023.  Burton alleges several instances of ineffective assistance of counsel in support of the Motion to vacate his sentence.  First, Burton asserts that his attorney failed to consult with him about appealing his conviction.  (ECF No. 23-1 at 7.)  Specifically, Burton avers that he "unequivocally" expressed his desire to appeal his conviction to his attorney and his attorney responded, "you cannot appeal." *Id.* at 8.  Second, Burton asserts his attorney provided ineffective assistance of counsel by failing to "challenge the chain of custody" for the fentanyl.  *Id.* Third,

Burton asserts that his attorney provided ineffective assistance by failing to "observe and object to the drug weight stipulated to in paragraph four of the Stipulation of Facts" attached to the Plea Agreement. *Id.* at 10.

Burton filed the first supplement to his Motion on July 26, 2023, which raises two additional arguments: (1) that his attorney failed to challenge the discrepancy between the weight of drugs attributed to Burton and the weight of drugs attributed to his co-conspirators; and (2) his attorney provided ineffective assistance of counsel by allowing him to "plead to 10 years" for the firearm charge in Count Two.  (ECF No. 30 at 1-2.)  Burton filed the second supplement to his Motion on August 18, 2023, which reiterates the arguments raised in the Motion. (ECF No. 33).

Burton filed a third supplement on December 18, 2023 (ECF No. 37) – after the Government filed its opposition to the Motion and Burton had filed his reply.  In his third supplement to the Motion, Burton raises challenges to the laboratory reports used to test the fentanyl.  Specifically, Burton complains that the lab reports do not provide a "substance purity report" and the forensic chemist concluded that the tested substance was fentanyl with a "90% level of confidence."  (ECF No. 37 at 2.)  Burton further complains that his attorney provided ineffective assistance by failing to make issue of the time lapse between submission of the seized suspected fentanyl to the laboratory and its analysis. *Id.* at 3-4.  Burton also urges that the delay effected a violation of his due process rights by the Government. *Id.* at 4-5.

The Government responded to the arguments raised in the Motion and the supplement at ECF No. 30, asserting that Burton's claims of ineffective assistance of counsel are without merit. (ECF No. 32 at 6.)  The Government did not respond to the supplements at ECF Nos. 33 and 37.

## II.    LEGAL STANDARD

Under 28 U.S.C. § 2255, a prisoner in federal custody may move to vacate, set aside or correct, a federal prison sentence on the following grounds: (1) "the sentence was imposed in violation of the Constitution or laws of the United States" (2) "the court was without jurisdiction to impose such sentence"  (3) "the sentence was in excess of the maximum authorized by law," or the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a);  *Hill v. United States*, 368 U.S. 424, 426-27 (1962).  To prevail on a § 2255 motion, the movant bears the burden of proving his claims by preponderance of the evidence.  *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).  "[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Addonizio*, 442 U.S. 178, 185(1979) (quoting *Hill v. United States*, 368 U.S. 424, 426-27 (1962)).  The scope of a § 2255 collateral attack is markedly narrower than an appeal, and a "collateral challenge may not do service for an appeal." *Foster v. Chatman*, 578 U.S. 488, 519 (2016) (Alito, J., concurring) (citations omitted).  Relief under § 2255 is reserved only for situations when failing to grant relief would be "'inconsistent with the rudimentary demands of fair procedure' or constitute[] a complete 'miscarriage of justice.'" *United States v. Vonn*, 535 U.S. 55, 64 (2002) (quoting *United States v. Timmreck*, 441 U.S. 780, 783 (1979)).

Pursuant to 28 U.S.C. § 2255(b), the court must hold an evidentiary hearing on the Motion "[u]nless the motion and the files and records conclusively show that the prisoner is entitled to no relief."  *United States v. Mayhew*, 995 F.3d 171, 176 (4th Cir. 2021).  An evidentiary hearing on a § 2255 motion "is required when a movant presents a colorable Sixth Amendment claim showing disputed facts beyond the record, or when a credibility determination is necessary to resolve the claim." *Id.*  at 176-77.  If the district court "denies § 2255 relief without an evidentiary hearing,

4

the nature of the court's ruling is akin to a ruling on a motion for summary judgment," and the appellate court reviews "the facts in the light most favorable to the § 2255 movant." *United States v. Poindexter*, 492 F.3d 263, 267 (4th Cir. 2007).   As discussed in greater detail below, here, the record is more than sufficient for the court to rule on the Motion without an evidentiary hearing.

## III.    DISCUSSION

### A.    Ineffective Assistance of Counsel

All but one of Burton's claims hinges upon allegations of ineffective assistance of counsel subject to the test forth in *Strickland v. Washington*, 466 U.S. 668 (1984).   It is well settled that the Sixth Amendment "right to counsel is the right to effective counsel." *Strickland,* 466 U.S. at 686.   In *Strickland,* the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance.

Under the first prong of the test, the petitioner must demonstrate that counsel's performance was deficient and "fell below an objective standard of reasonableness." *Id*. at 688. Under the second prong, the petitioner must show that the deficient performance prejudiced the defense. *Id*. at 687.   In order to satisfy the first *Strickland* prong, the movant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*   As for the second prong, when a movant collaterally attacks a conviction resulting from a guilty plea, the movant must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).   "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Further, there is a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance. *Id.* at 689-90.

5

### 1.      Claim of Error No. 1

In support of Burton's first claim that his attorney rendered ineffective assistance of counsel, he asserts that his desire to appeal was "unequivocally" conveyed to his attorney, but his attorney responded, "you cannot appeal."  (ECF No. 23-1 at 8.)  Burton argues that his attorney's response "fell woefully short of Counsel['s] [] duty to consult with Burton regarding the advantages and disadvantages of taking an appeal."  *Id.*  Burton also posits that if the record is insufficient to establish the necessary probability that Burton wanted to appeal," an evidentiary hearing is required because the conversations between him and his attorney took place outside of the courtroom.  *Id.*

The Government asserts that based on the record, Burton did not expressly order his attorney to file a notice of appeal, and in the absence of such a directive, failing to file an appeal when Burton waived his appellate rights pursuant to the Plea Agreement is not unreasonable performance on the part of counsel.  (ECF no. 32 at 10.)

 "Failure to file a requested appeal is *per se* ineffective assistance of counsel, irrespective of the possibility of success on the merits."  *United States v. Foster,* 68 F.3d 86,88 (4th Cir. 1995).  Although mindful that *pro se* litigants are entitled to liberal construction of their court papers, Burton does not assert that his attorney ignored an express directive to file an appeal.  Rather, quoting *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), Burton asserts that his attorney failed to consult with him generally about filing an appeal: "[r]elevant in the matter <u>sub judice</u>, counsel is required to consult with a defendant 'when there is a reason to thin either (1) that a defendant would want to appeal . . . or (2) that this petitioner defendant reasonably demonstrated to counsel that he was interested in appealing."

Burton is correct that *Flores-Ortega* is relevant to the Motion.  The question before the
Court in *Flores-Ortega* was whether counsel is deficient "for not filing a notice of appeal when
the defendant has not clearly conveyed his wishes one way or the other."  528 U.S. at 477.  Absent
an express directive to file an appeal, and counsel's refusal to do the same, the court applies the
*Strickland* test to Burton's claim that his attorney failed to consult with him about his right to
appeal.  *Id.* at 476-77.  The *Flores-Ortega* Court explained:

> In those cases where the defendant neither instructs counsel to file
> an appeal nor asks that an appeal not be taken, we believe the
> question whether counsel has performed deficiently by not filing a
> notice of appeal is best answered by first asking a separate, but
> antecedent, question: whether counsel in fact consulted with the
> defendant about an appeal.  We employ the term "consult" to convey
> a specific meaning -- advising the defendant about the advantages
> and disadvantages of taking an appeal, and making a reasonable
> effort to discover the defendant's wishes.  If counsel has consulted
> with the defendant, the question of deficient performance is easily
> answered:  Counsel performs in a professionally unreasonable
> manner only by failing to follow the defendant's express
> instructions with respect to an appeal. . . .  If counsel has not
> consulted with the defendant, the court must in turn ask a second,
> and subsidiary, question: whether counsel's failure to consult with
> the defendant itself constitutes deficient performance."

*Id.* at 478.

With respect to the first *Strickland* prong, here, the question of deficient performance is
easily answered.  Burton offers no support for the proposition that his attorney did not consult with
him regarding filing an appeal; nor does Burton suggest or offer evidence that his attorney failed
to follow an express directive regarding an appeal.  Instead, the record shows that Burton did have
an opportunity to consult with his attorney.  In a letter dated January 13, 2023, Burton wrote to his
attorney:

> I do not recall your advising me that I had a right to file a notice of
> appeal per Garza v. Idaho.  If your recollection is different please

> provide to me copy of the written notification you provided with date.

(ECF No. 32-3 at 2.)

Burton's attorney responded,

> You wrote that you "do not recall your advising me that I had a right to file a notice of appeal . . ." As reflected in the transcript, the fact that you had waived your right to appeal was addressed by the Court and me. Further, after the hearing, I recall that we discussed your right to file a notice of appeal, which I explained would likely be subsequently dismissed, and you did not indicate any interest in my filing such a notice.

(ECF No. 32-3 at 4.)

Burton does not dispute the authenticity of the letters between him and his attorney.  Other than the conclusory assertion in his Motion that his attorney failed to consult with him about an appeal, Burton offers no proof to support this claim.  Burton's attorney's performance cannot be said to be unreasonable under *Strickland* when the record reflects that his attorney did consult with him about filing an appeal and did not fail to heed any directive by Burton (none has been suggested).  In this instance, the letter from Burton's attorney – which Burton neither challenges nor disputes – provides that, after discussing the matter with counsel, Burton did not indicate an interest in filing an appeal.  Burton does not satisfy the first prong under *Strickland* on this claim.

Because Burton's counsel did not act unreasonably with respect to Burton's appeal rights, Burton did not suffer prejudice regarding his appeal rights.  Therefore, Burton's claim on this point does not satisfy the second prong of the *Strickland* test.[1]

---

[1] The court also notes that pursuant to the Plea Agreement, Burton waived the right to appeal his conviction and sentence.  (ECF No. 14 at 7.)

2.      **Claim of Error No. 2**

Burton asserts that his attorney rendered ineffective assistance of counsel by failing to challenge the chain of custody for the fentanyl recovered incident to his arrest on December 15, 2021. (ECF No. 23-1 at 8.)  Specifically, Burton asserts that the application and affidavit in support of the search warrant for the stash house noted "approximately 4,000 gelatin capsules," but the Stipulation of Facts attached to the Plea Agreement reflects that 7,094 gelatin capsules were recovered from the stash house.  *Id.* at 9.

The Government counters that Burton's claim fails under bother prongs of the *Strickland* test.  With respect to the first prong of the *Strickland* analysis, the Government asserts that the "4,000" gelatin capsules listed in the warrant application and affidavit were estimates of the amount that would be recovered, whereas the 7,094 capsules reflected in the Stipulation of Facts were based on the laboratory report following execution of the warrant.  (ECF No. 32 at 11.)  The Government argues that it was not ineffective for Burton's attorney to rely on the number of capsules as identified in the laboratory reports.  *Id.*   Next, the Government asserts that Burton admitted under oath at the plea hearing that the factual stipulation was accurate; and that "[s]worn statements at Rule 11 hearings are 'conclusively established' in the 'absence of extraordinary circumstances.'"  *Id.* (quoting *United States v. Lemaster,* 403 F.3d 216, 221-22 (4th Cir. 2005)). The Government argues further that Burton fails to offer evidence of extraordinary circumstances. (ECF No. 32 at 11.)  Finally, the Government avers that Burton's attorney did raise the issue of drug weight with the Government.  *Id.* 11-12.

The court agrees with the Government that Burton has not satisfied the first *Strickland* prong as to this claim.  The thrust of Burton's argument rests on his position that his attorney should have challenged the discrepancy between the number of capsules listed in the search

warrant affidavit and those listed in the Stipulation of Facts.  As the Government correctly notes, the amount of gelatin capsules listed in the search warrant affidavit was an estimate of the amount of fentanyl that would be recovered incident to a search of the stash house.  The Stipulation of Facts reflects the actual number of fentanyl capsules recovered – as confirmed by the laboratory.

Burton's attorney did not act unreasonably by relying on the information contained in the laboratory reports.  Therefore, this court finds that Burton's attorney's assistance was not deficient and did not deprive Burton of his Sixth Amendment protections.

The court is also persuaded by the Government's argument that Burton does not offer any evidence of extraordinary circumstances which would overcome his sworn statement to the court at the plea that the Stipulation of Facts were accurate:

> The Court: I have reviewed the signature, Mr. Burton, that you placed, I believe, on these stipulated facts. Did you sign that stipulation of facts?
>
> The Defendant: Yes, Your Honor.
>
> The Court: Okay. And do you have any question about the accuracy of those facts that the attorney read into the record just a moment ago?
>
> The Defendant: No, Your Honor.

(Plea Hearing Transcript, ECF No. 20 at 31:17-24.)

Finally, the record reflects that Burton's attorney did in fact challenge the drug weight attributed to Burton.  In a letter to Burton, his attorney stated:

> Separately, in an email, you raised an issue regarding drug weight. As you know, we discussed this matter in great detail and negotiated with the government after having brought our concerns about the drug weight to the government's attention. The final plea agreement is a result of our tough negotiating stance.  I do not agree with you that I missed an error.

(ECF No. 32-3 at 5.)  Burton does not offer any evidence that his attorney did not discuss concerns regarding the drug weight with the Government.  The record reflects that Burton's attorney did discuss and negotiate with respect to the drug weight in order to get Burton a favorable plea deal. Counsel's negotiations resulted in an agreement that Burton received a sentence well below the guidelines, a more favorable sentence than he likely would have received had he been convicted at trial.  For all of these reasons, Burton fails to satisfy the first *Strickland* prong.

With respect to the second *Strickland* prong, the Government argues that Burton cannot demonstrate prejudice as required because he offers no evidence that he would have elected to go to trial if counsel had persisted in challenging the drug weight.  *Id.* at 13.  Specifically, the Government argues that it would have been irrational for Burton to go to trial because under the Plea Agreement, he received a sentence of 156 months' incarceration; whereas, if found guilty at trial, Burton faced the statutory maximum of 20 years' imprisonment regardless of the drug weight attributed to him.  *Id.*  The court agrees.  Burton fails to satisfy the second prong under *Strickland* on this basis.

### 3.     Claim of Error No. 3

Burton asserts that his attorney failed to observe and object to the drug weight in the Stipulation of Facts.  (ECF No. 23-1 at 10.)  Specifically, Burton references paragraph four of the Stipulation of Facts, which provides:

> When agents executed the search warrants at the stash house, they recovered mixtures or substances containing fentanyl of approximately 431.25 grams, which has been tested by an accredited lab. For example, they recovered on bag containing approximately 6,450 gelatin capsules (231.67 grams) of fentanyl and another bag containing 644 gelatin capsules (113 grams).  This was also fentanyl residue from various packing materials, personal protective equipment, a money counter, and digital scale.

(ECF No. 14 at 12, ¶ 4.) Burton argues it was error for his attorney not to observe that 231.67 grams and 113 grams do not equal 431.25 grams and, as a result, his sentence was incorrectly enhanced on the basis that he possessed over 400 grams of fentanyl.  (ECF No. 23-1 at 11.)  Burton argues that had his attorney challenged the drug weight, he would have received a lesser sentence. *Id.*

The Government counters that Burton's claim on this ground fails both prongs of the *Strickland* test because the laboratory reports indicated approximately 431.25 grams of fentanyl was seized from the stash house and the total amount is not limited to the grams of fentanyl in the gelatin capsules.  (ECF No. 32 at 15.)  The Government argues that Burton's attorney did not perform unreasonably by failing to challenge the drug weight because his attorney was allowed to rely on the laboratory reports.  *Id.* at 16.  With respect to the second prong of the *Strickland* test, the Government asserts that this claim fails for the same reason Burton's claim regarding the number of gelatin capsules fails – Burton cannot demonstrate that he would have received a more favorable result had his attorney challenged the drug weight.  *Id.* at 16.  The court agrees.

Specifically, the court agrees with the Government that paragraph four of the Stipulation of Facts details other sources of fentanyl outside of the gelatin capsules.  Paragraph four accounts for fentanyl recovered from packing equipment, personal protective equipment, a money counter, and digital scale.  The fact that the amount of fentanyl recovered from the gelatin capsules does not add up to 431.25 does not mean error was committed in determining the amount of fentanyl recovered overall.  Further, the exact amount of recovered fentanyl was determined by laboratory tests, which Burton's counsel was entitled to rely on.  *See supra.*   And there was no reason for Burton's counsel to challenge the amount of fentanyl recovered especially in light of Burton's

express admission to the court that he possessed that amount.  Accordingly, Burton's attorney did not act unreasonably in failing to observe or challenge the drug weight.

Burton's claim also fails under prong two of the *Strickland* test.  As discussed herein, in order to demonstrate prejudice, Burton must show that, but for his attorney's actions, he would not have taken a plea and would have elected, instead, to go to trial.  Burton asserts that, but for his attorney's error he would have received a lesser sentence.  As previously explained, had Burton been found guilty at trial, he faced the potential of a considerably harsher sentence than that negotiated by his attorney as set forth in the Plea Agreement (and ultimately imposed by the court).  Burton offers nothing to support the conclusion that he would have rejected or abandoned the Plea Agreement and opted for a trial had his counsel observed or advised him that the amount of fentanyl recovered solely from the gelatin capsules was less than 431 grams, especially in light of the other facts evidencing other sources of the recovered fentanyl.

### 4.     Claim of Error No. 4

Burton asserts that he and his co-defendants were all convicted of possession with intent to distribute, but 431 grams of fentanyl were attributed to Burton and 400 grams of fentanyl were attributed to the other co-defendants.  (ECF No. 30 at 2.)  Burton argues that his attorney rendered ineffective assistance of counsel by failing to challenge the disparity between the drug weight attributed to him and the drug weight attributed to his co-defendants.  *Id.*

With respect to the first *Strickland* prong, the Government responds that Burton's claim on this ground is simply false.  (ECF No. 32 at 16.)  Specifically, the Government asserts that Burton's co-defendants admitted to possessing the exact same amount of fentanyl as Burton (431.25 grams), and Burton's counsel did not perform unreasonably by failing to raise an argument that lacks merit. *Id.*   The Government further asserts that Burton plead guilty before his co-conspirators, and it

would have been impossible for Burton's attorney to raise an argument that there was a sentence disparity between Burton and his co-defendants. *Id.*

With respect to the second *Strickland* prong, the Government argues that even if Burton did receive disparate treatment than his co-defendants, he offers no evidence that going to trial would have (or might have) yielded a more favorable outcome. *Id.*

The court agrees with the Government as to both *Strickland* prongs. Further, Burton offers nothing but bare conclusions that a different amount of fentanyl was attributed to him than to his co-defendants. Further Burton fails to offer any plausible basis on which to conclude that he would have elected to go to trial because the amount of fentanyl attributed to his co-defendants was 31 grams less than the amount of fentanyl attributed to him. Nor does he offer any evidence that the outcome at trial would have been more favorable than the outcome he received pursuant to the Plea Agreement. The claim fails under both *Strickland* prongs.

### 5.    Claim of Error No. 5

Burton asserts that his attorney was ineffective for "having Mr. Burton plead to 10 years for the Section 9922[sic](g) charge." (ECF No. 30 at 2.) Burton argues that there was no benefit in pleading to the § 922(g) charge. *Id.* at 3.

The Government asserts that Burton provides no evidence that his attorney did not discuss the implications of pleading guilty to the § 922(g) charge; and text messages between Burton and his attorney indicate they discussed the advantages and disadvantages of pleading to the various charges. (ECF No. 32 at 17.) The Government further posits that, even if Burton's attorney did not advise him of the advantages and disadvantages attendant to pleading guilty to the various charges, the court cleared up any possible confusion at the plea/sentencing proceeding by advising Burton of the maximum possible penalties he faced. *Id.* The Government argues that the record

confirms that Burton expressly acknowledged he understood the maximum penalties he faced and cannot now claim he did not enter a knowing and voluntary plea. *Id.*

    With respect to the second prong of the *Strickland* test, the Government argues that because the 120-month sentence for the § 922(g) charge was imposed to run concurrent to Burton's 156-month sentence on the 21 U.S.C. § 841(a) conviction, and therefore Burton faced no additional incarceration per the Plea Agreement, Burton cannot demonstrate the requisite prejudice. *Id.* at 17-18.

    The court agrees with the Government as to both *Strickland* prongs. First, Burton offers no evidence that his counsel failed to explain the implications of pleading guilty to the § 922(g) charge; to the contrary, counsel sent numerous text messages providing advice and information regarding the implications of pleading guilty. *See generally* (ECF No. 32-5). The record does not support a finding that Burton's attorney failed in this aspect. Further, Burton fails to show prejudice (the second *Strickland* prong). He offers no proof or basis to find that he would have received a more favorable outcome had he elected to go to trial. As set forth above in describing the Government's argument, pursuant to the Plea Agreement, Burton's 120-month sentence for the § 922(g) charge runs concurrent to the 156-month sentence imposed for the possession with intent to distribute charge in Count One of the Information. Therefore, Burton is not serving additional prison time for the § 922(g) charge. Had he elected to go to trial and been found guilty of these charges, he may well have received consecutive sentences of longer duration.

### 6.    Claim of Error No. 6

    As previously noted, Burton filed a third supplement (ECF No. 37) raising grounds in support of his Motion not previously raised in the Motion itself or supplements filed at ECF Nos. 30 and 33. Although the Government did not respond to the third supplement, the record is

sufficient for the court to address Burton's additional arguments absent the Government's response. Here, Burton challenges the validity of the lab reports relevant to his conviction. Burton's final allegation of error set forth in his third supplement to the Motion is two-fold. He raises an ineffective assistance of counsel claim against his attorney and a due process claim against the Government. To the extent Burton's challenge regarding the lab reports are offered in support of his ineffective assistance of counsel claim, the court employs the *Strickland* analysis.

Under the first prong, as discussed throughout, Burton's counsel was entitled to rely on laboratory reports relevant to the charges against Burton. Moreover, Burton has failed to offer any evidence refuting the information contained in the laboratory reports. Burton's qualms with the laboratory reports do not lead to the conclusion that Burton's counsel was so deficient as to deprive him of the protections of the Sixth Amendment. Further, Burton offers no evidence that the issues he raises regarding the laboratory reports would have resulted in a more favorable outcome had he elected to go to trial. Indeed, Burton does not assert that the substance recovered from the stash house was not fentanyl; rather, he takes issue with the fact that the forensic chemical analysis was to a 90% degree of confidence. None of Burton's allegations with respect to the laboratory reports change the fact that he admitted to having fentanyl and the laboratory reports confirmed the same. Accordingly, Burton's claim on this basis fails under both prongs of the *Strickland* test.

To the extent Burton claims the Government violated his due process right, the court's analysis is governed by a different standard. "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is actually innocent,'" *Bousley v. United States*, 523 U. S. 614, 622 (1998) (quoting *Murray* v. *Carrier,* 477 U.S. 478, 485 (1986); *Wainwright* v. *Sykes,* 433 U.S. 72, 87 (1977)).

16

In order to show cause for failing to raise a claim on direct appeal, a petitioner must prove "some objective factor external to the defense such as the novelty of the claim or a denial of effective assistance of counsel." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991). *See also Mikalajunas*, 186 F.3d at 493 (holding that movant must demonstrate "something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel"). Additionally, to demonstrate prejudice a petitioner must prove that the alleged error was an "*actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original). Prejudice does not support relief of a procedural default in the absence of a showing of cause. *Carrier*, 477 U.S. at 494.

Here, Burton has offered no evidence of any novel, external factor that prevented him from asserting this claim on direct appeal. Although Burton asserts that his attorney told him he could not appeal, he does not assert that he tried to file a direct appeal and that those efforts were thwarted by his attorney or some other external force. Accordingly, Burton cannot show cause as to why he did not file a direct appeal; therefore, prejudice (if any) does not support his requested relief. This claim is procedurally defaulted.

To show "actual innocence," the petitioner "must demonstrate actual factual innocence of the offense of conviction, *i.e.*, that petitioner did not commit the crime of which he was convicted; this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent." *United States v. Mikalajunas*, 186 F.3d 490, 494 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)). Importantly, the petitioner must show actual innocence by clear and convincing evidence. *Mikalajunas*, 186 F.3d at 494. The Fourth Circuit explained, "[a] valid actual innocence claim 'requires petitioner to support his allegations of constitutional error with new reliable

17

evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial.'" *Finch v. McKoy*, 914 F.3d 292, 298 (4th Cir. 2019) (quoting *Schlup v. Delo*, 513 U.S. 298, 324808 (1995)). Moreover, a petitioner must "'demonstrate that the totality of the evidence would prevent any reasonable juror from finding him guilty beyond a reasonable doubt, such that his incarceration is a miscarriage of justice.'" *Finch*, 914 F.3d at 298 (quoting *Teleguz v. Pearson*, 689 F.3d 322, 329 (4th Cir. 2012)).

The record is devoid of support for the conclusion that Burton is actually innocent of the crimes to which he pleaded guilty; and he expressly admitted that the facts offered by the Government in support of the plea were, in fact, true.

## IV.     CONCLUSION

For the reasons set forth herein, by accompanying order, the Motion is denied.

/S/

January 7, 2024

_____
Julie R. Rubin
United States District Judge

18